## Hankel Printing Company, Appellee, v. Illinois Manufacturers' Casualty Association, Appellant.

### Gen. No. 30,460.

1. INSURANCE—*construction of exception in indemnity policy as to liability for injury caused by employee whose compensation not included in pay roll upon which premium computed.* Under an indemnity policy protecting the insured against liability for personal injury to others than employees sustained upon the premises of the insured, except where such injuries are "caused by an employee whose entire compensation is not included in the pay roll upon which deposit premium for this policy is computed," no liability will attach where the injury is caused by the negligence of such an employee, whether such negligence consists of acts or omissions to act in violation of a duty owed by such employee to the person injured.

2. INSURANCE—*burden of proof as to whether claim under indemnity policy was within exception thereto.* In an action upon an indemnity policy protecting the insured against liability for personal injury to others than employees sustained upon the premises of the insured, except where such injuries are caused by an employee whose entire compensation is not included in the pay roll upon

which the premium for the policy was computed, wherein plaintiff alleged that the liability as to which indemnity was asked was not one resulting from an injury caused as provided in such exception, the burden was upon plaintiff to prove that its claim was not within the exception.

3. INSURANCE—*sufficiency of evidence to show claim under indemnity policy not within exception therein stated.* Evidence in an action upon an indemnity policy protecting the insured against liability for personal injury to others than employees sustained upon the premises of the insured, except where such injuries are caused by an employee whose entire compensation is not included in the pay roll upon which the premium for the policy was computed, held not to show that the claim upon which the action was based was one for a liability not within the exception above stated.

Appeal by defendant from the Superior Court of Cook county; the Hon. E. M. MANGAN, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1925. Reversed. Opinion filed May 5, 1926.

FYFFE & CLARKE, for appellant.

CHARLES L. MAHONY, for appellee; ELMER M. LEESMAN, of counsel.

MR. JUSTICE TAYLOR delivered the opinion of the court.

This is a suit brought by the plaintiff, Hankel Printing Company, against the defendant, Illinois Manufacturers' Casualty Association, on a contract of indemnity. One Reinke having obtained a judgment against the plaintiff in a personal injury suit for $5,000, the plaintiff by this cause of action seeks to be indemnified therefor by the defendant. There was a trial before the court, without a jury, and a judgment for the plaintiff in the sum of $5,000. This appeal is from that judgment.

On October 20, 1914, the plaintiff and the defendant entered into an indemnity agreement whereby the defendant agreed "to insure and indemnify the subscriber (the plaintiff) against loss by reason of the

liability imposed or accepted under the existing Workmen's Compensation Act, for damages on account of injuries   *   *   *   to his employees." The premium charged by the defendant was based upon the estimated annual pay roll of the plaintiff. On November 1, 1920, a signed typewritten rider, entitled "Public liability endorsement," was attached to the contract of indemnity. It was as follows: "In consideration of the additional deposit premium herein provided, this policy is extended to indemnify the assured against loss by reason of the liability imposed upon him by law for damages on account of bodily injuries accidentally sustained,   *   *   *   by any person or persons not employed by the Assured, providing that such accidents are sustained while within or upon the premises of the Assured   *   *   *   or ways immediately adjoining; but this does not apply to injuries caused by an employee whose entire compensation is not included in the pay roll upon which the deposit premium for this policy is computed, nor to injuries caused by reason of the use, maintenance or ownership of any horses, draft animals, or vehicles, or automobiles, or any other self-propelled vehicles." The premium charged for the general indemnity for a year was $131.50, and the premium charged for the public liability indorsement, $10.50.

On December 11, 1920, one Elsie Reinke—who was not employed by the plaintiff, but was walking on the street near the premises of the plaintiff—was struck and injured by some glass falling from one of the windows on the plaintiff's premises. On May 24, 1921, she brought suit in the superior court of Cook county against the plaintiff, Hankel Printing Company, and A. S. Trude on account of her personal injuries, and on June 28, 1922, recovered a judgment against the defendant, Hankel Printing Company (Trude having been dismissed out of the case), in the sum of $5,000 and costs.

On October 16, 1924, this suit was brought by the plaintiff, Hankel Printing Company, against the defendant, Illinois Manufacturers' Casualty Association, claiming that the defendant, under the terms of the indemnity contract, was liable to the plaintiff in the sum of that judgment.

The case was called for trial on March 14, 1925, and, on agreement of the parties, was submitted to the court, without a jury. There was offered in evidence the contract of indemnity, together with the public liability indorsement. It was stipulated that one George Hankel was president of the plaintiff, Hankel Printing Company, at the time of the injury to Elsie Reinke, and that his compensation was not included in the pay roll upon which the deposit premium of the policy was computed.

Various pleadings, including the declaration and amended declaration, and papers filed in the personal injury case, and the record of the verdict and judgment of $5,000, were introduced in evidence. It was, also, shown that the cause was discontinued as to A. S. Trude, the plaintiff's landlord. Three witnesses, Elsie Reinke, the woman who was injured, Clemons, the janitor of the building and Hankel, president of the plaintiff company were called for the plaintiff. The defendant offered no evidence.

The evidence showed that Elsie Reinke, when going to work, on December 11, 1920, and while walking on the sidewalk in front of the building at number 309 River Street, Chicago, in which the Hankel Printing Company was located, was seriously injured by a piece of glass, which fell from a window in the office of the president of the plaintiff company, which office was on the second floor. It showed that the building was owned by A. S. Trude and that the plaintiff was a tenant.

The evidence of Clemons, the janitor of the building and who had worked there for 13 years for A. S.

Trude, was as follows: It was part of the bottom pane of the window that fell out. The pane was about three feet high, and somewhat less across. He saw it every day. It had been cracked for several years before the accident. It did not look as though it would fall out. When he first saw it there was a crack extending about half way across. He saw it the evening before the accident, and the next morning. He did not know what caused it to fall out. He did not work for the plaintiff, and did not remember that Hankel spoke to him about fixing the window. He did not speak to Hankel three days before the accident about it. When asked who repaired the windows, he said, "If they got in very bad condition I just would go ahead and fix them and notify Mr. Trude. Other than that, I don't know if the tenants or Mr. Trude used to fix them."

The evidence of Hankel is as follows: He is president of the plaintiff company. The other officers are his wife and sons, the company being a family affair. The employees of the plaintiff number from 20 to 25. The window in question opened out on River Street. Two or three years before the accident, some one shot a hole through the window, the hole was about the size of a dime, or a little larger. By and by, the glass cracked more and more. There were two cracks all the way across, otherwise it was in good condition. He opened and shut the window every day in summer, and that may have helped to crack it more, but it did not show that it would break out. On the morning in question, the window was a little way open at the top, and the weather was windy and stormy. There was a strong wind. "It was nasty weather, windy, very windy, and it was loose before the wind made it more loose. I was sitting at my desk when I saw it getting loose and I jumped up from my desk and tried to hold the glass, * *. * so I jumped to the window and it fell down on the window sill. It broke there in half and the other part fell down and half of it fell on the

window sill and half of it fell on the street." There were quite a number of windows in the shop. They were quite often repaired by the landlord. On cross-examination his evidence is as follows: Some days or weeks before the accident he told the janitor about its condition and that it ought to be fixed, because, "it didn't look nice," it was a disgrace. On the day in question he opened the window a little. "I jumped up and tried to hold it  *  *  *  and it did slip really through my hands, the glass, to the outside. If I had turned it inside it was all right. It slipped outside and fell on the stone on the window there and broke in many small pieces. One piece fell over the sidewalk." If it had not been for the storm, he supposed the window would still be there. He relied on the janitor to fix the windows. He did not have anybody to fix them. The landlord paid the bill. He spoke to the agent of the building about the window being broken, but the agent denied it. Examined by the court, his evidence is as follows: The wind was the cause of the glass falling out. It was a windy day and the glass rattled, and he got a little "scared" and kept his eye on the glass. "I thought I would have to do something, or paste it up with something. That was in my mind. In the same moment I saw the glass falling out and I jumped up and tried to hold it. So I think the wind was the real cause of it." He tried to hold it, but could not. It was the upper window. When he jumped up it was already falling. He did not get hold of the piece that fell out.

It is contended for the defendant that the liability for which indemnity is sought falls within the exception mentioned in the contract of indemnity. In other words, that the injury to Elsie Reinke was caused by the negligent omission to act on the part of Hankel, president of the Hankel Printing Company, whose compensation was not included in the pay roll, and, therefore, was an injury caused by an employee whose

444      APPELLATE COURTS OF ILLINOIS.

Hankel Prtg. Co. v. Ill. Mfrs. Casualty Assn., 240 Ill. App. 438.

compensation was not included. It is urged that the Hankel Printing Company was held liable to Elsie Reinke solely for negligence in maintaining a broken windowpane; that Hankel, president, had, and assumed, a duty as to that particular window pane; that he sat month after month for several years in the room where the window was, with daily knowledge of its condition and increasing danger, saw it get worse and worse, and crack more and more in various directions, until it finally fell and struck and injured Elsie Reinke; that it was his negligent omission to act that caused the accident; that no one else in the plaintiff company either acted or omitted to perform any duty so as to cause the accident.

On the other hand, it is urged for the plaintiff that the provision in the contract is to be construed most favorably to the assured, and strictly against the insurance company; that the word "caused" may be used in the sense of an act of commission or omission; that where a word may be used in different senses, its use in the insurance contract will be construed in a sense most favorable to the assured; that the burden of proof that Hankel came within the exception was on the defendant, and that that burden is not satisfied merely by showing that the liability of the assured was due to some nonfeasance.

The particular words which it is necessary to interpret are as follows: "But this does not apply to injuries caused by an employee whose entire compensation is not included in the payroll." In interpreting those words it is necessary to bear in mind the purpose of the indemnity contract, as modified by the rider entitled, "Public liability indorsement." In putting on the rider, the parties were evidently intending to extend the indemnification so as to insure the plaintiff against any loss that might be imposed upon it by law for personal injuries accidentally sustained by any one not employed by the plaintiff, provided the

injuries were sustained on or about the plaintiff's premises, but to exclude loss for injuries caused by an employee whose compensation was not included in the pay roll. It is admitted that "injuries caused by" Hankel were not included within the scope of the rider. It follows, therefore, that we must start with the assumption that all injuries which were "caused by" Hankel were excluded as a source of indemnity under the contract.

The question then arises: Do the facts which the evidence establishes prove that the personal injuries of Elsie Reinke were caused by Hankel? To hold that they were, it is necessary to conclude that there was some duty upon him which he failed to carry out, and which, as a consequence, resulted in the accident in question. The evidence shows that he was president of the company; that he had his office in the room within which the window in question was; that two or three years before the accident some one shot a hole about the size of a dime, or a little larger, through the window; that as a result the windowpane cracked; that from day to day, in summer at least, Hankel opened and shut the window, and helped in this way to crack it more and more; that there were two cracks all the way across; that he saw it from day to day in its cracked and therefore dangerous condition; that he did not see fit, knowing its condition, to have it repaired; that he must have known, in the exercise of ordinary care and judgment, that at any time some portion of the windowpane might fall out on the street, and that on the day of the accident, when there was a strong wind, it did break out and a portion of it fell and produced the injuries above referred to.

It is urged for the plaintiff that the phrase "caused by" must be interpreted as implying affirmative overt acts. With that we do not agree. Actionable negligence, based on want of care, may arise from a state of omission, as well as from one of commission.

446    APPELLATE COURTS OF ILLINOIS.

Hankel Prtg. Co. v. Ill. Mfrs. Casualty Assn., 240 Ill. App. 438.

"Negligent wrong-doing is that which is not intentional, but results from culpable inadvertence or indifference. The mental attitude of the wrong-doer consists not in any desire to do harm, but in the absence of a sufficient desire to avoid it. The law is not satisfied with the mere absence of any intention to inflict injury, but demands a positive direction of the will towards the avoidance of it." Note, page 410, Salmond Jurisprudence, 7 ed.

In our opinion, considering the language of the policy and all the circumstances surrounding its issuance, it is entirely clear that the chief object sought to be attained was insurance of the plaintiff company against damages resulting from the negligence of any of its employees, with the exception of those whose compensation was not included in the pay roll on which the premium to be paid for this policy was based. That being the case, the phrase "caused by an employee," in our opinion, should be taken, in this particular case, in the sense of "caused by the negligence of an employee." Further, it seems clear that we would be doing violence to the language found in this policy if we were to hold that it must be considered as excluding negligence which was the result of omission, or a failure to act.

In *Lynch v. Commercial Casualty Ins. Co.*, 93 N. J. L. 125, the court considered an insurance policy which provided that the defendant was not liable if the injury was "caused by" any one employed by the insured under 16 years of age. In that case a boy 14 years of age, while in charge of the elevator in a building, left it unattended, so that in his absence some one on an upper floor pulled the rope and caused the elevator to ascend, leaving an opening unguarded, through which the injured person fell, and the court held that "the proximate cause of the accident was the absence of the boy from his post of duty," and that the case fell within the exception and that the insur-

ance company was not liable. In that case, it was the boy's neglect and failure to do his duty—that duty, however, being prescribed, at least in part, as the result of his relations with his employer—which was the cause of the injury. It was the result, however, of omission, and not of commission.

In *Butler Street Foundry & Iron Co. v. Illinois Manufacturers' Casualty Ass'n*, 312 Ill. 287, the offense charged was that a truck loaded with steel girders, belonging to the insured, "was allowed to remain in a public highway several miles distant from the plant, and as the result of a collision with said truck two persons were killed and a third person injured." In that case it does not appear that it was the driving of the truck to the place in question, but rather the omission to remove it, or to guard or light it, that was the source of liability.

In the instant case, therefore, the window being in a dangerous condition in which it was for so long a period of time, and Hankel having daily knowledge of that, it cannot be said, with reason, that he was in the exercise of ordinary care in allowing the window to remain in its dangerous condition. No one in such an environment is entitled, but at his peril, to menace the life and health of others. In our judgment, the material and efficient cause of the injury was the negligence or breach of duty to exercise ordinary care on the part of Hankel.

The plaintiff contends that the burden was on the defendant insurance company, in order to prevent a recovery in this case, to show that the claim on which the plaintiff is suing was within the exception in the policy; in other words, that the policy was not to apply "to injuries caused by an employee whose entire compensation was not included in the pay roll upon which the deposit premium for this policy is computed." It appears, however, that the plaintiff in its declaration, after reciting the liability incurred by it

for injuries sustained by one who was not in its employ, proceeded to allege "that said injuries so sustained by her were not caused by any employee whose entire compensation was not included in the pay roll upon which the deposit premium for said policy was computed." Having seen fit to include that allegation in its declaration, we are of the opinion that the plaintiff must be held to have assumed the burden of proving it and it may not now take the position that the burden was on the defendant to prove the contrary.

It is urged for the plaintiff that the phraseology of the rider is ambiguous, and therefore it is the duty of the court to adopt a construction favorable to the assured. Considering what the evidence shows as to what actually transpired, in conjunction with the words used, we are not able to conclude that there is any ambiguity. To us it seems plain that the evidence demonstrates that the injuries in question were caused by a dereliction of duty on the part of Hankel, who himself was not included within the obligations of the rider.

The judgment, therefore, will be reversed.

*Reversed.*

THOMSON, P. J., and O'CONNOR, J., concur.